# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

## 42 U.S.C. § 1983 CIVIL RIGHTS COMPLAINT WITH DEMAND FOR JURY TRIAL

**PERRY BROWN,**
  Plaintiff,

VS.                                     CASE NO.: 3:19-cv-997-J-32MCR

| | |
|---|---|
| **MARK INCH**, Secretary<br>Department of Corrections<br>  Defendant #1 | **TERESA WOODAL**,<br>Infectious Disease Control, II,<br>  Defendant #8 |
| **CORIZON, LLC.**<br>  Defendant #2 | **DOCTOR E. PEREZ-LUGO**, CHO<br>Corizon & Centurion<br>  Defendant #9 |
| **CENTURION OF FLORIDA, LLC**<br>  Defendant #3 | **DOCTOR E. L. TOLEDO**, CHO<br>Centurion's Doctor<br>  Defendant #10 |
| **WOODROW A. MYERS, JR.**<br>Chief Operating Officer,<br>  Defendant #4 | **JULIE JONES**, Past Secretary,<br>Department of Corrections<br>  Defendant #11 |
| **DOCTOR ERRON CAMPBELL**<br>Medical director<br>  Defendant #5 | **THOMAS REIMERS**,<br>Health Services Director<br>  Defendant #12 |
| **RHONDA ALMANZA**<br>Vice-President of Operations,<br>  Defendant #6 | **DANIEL CHERRY**,<br>Former Medical Director FDC<br>  Defendant #13 |
| **HELEN SNEED**<br>Director Of Operations, Region II<br>  Defendant #7 | |

## I.   PLAINTIFFS

(1)   Name of Plaintiff:   Perry Brown
      Inmate Number:   #044515
      Prison or Jail:   Union Correctional Institution
      Mailing Address:   P.O. Box 1000
          Raiford, Florida 32083

## II.   DEFENDANTS

(1)   Defendant's Name:   MARK INCH,
      Official Possition:   Secretary
      Employed At:   Department of Corrections
      Mailing Address:   501 S. Calhoun Street
          Tallahassee, Fla. 32399-2500

      Official Capacity

(2)   Defendant's Name:   CORIZON HEALTH, Inc.
      Official Possition:   Former Contract Medical Provider For The FDC
      Employed At:   Corizon Health, Inc.
      Mailing Address:   12647 Olive Blvd.
          St. Louis, Mis. 63141

      Official Capacity

(3)   Defendant's Name:   CENTURION Of FLORIDA, LLC
      Official Possition:   Current Contract Medical Provider For The FDC
      Employed At:
      Mailing Address:   Paddock Park Prof. Bldg.
          3200 S.W. 34th Ave. Bldg. 700, Suite 701
          Ocala, Fla. 34474

      Official & Individual Capacity

(4) Defendant's Name: <u>WOODROW A. MYERS, JR.</u> *
Official Position: Official position: Chief Operating Officer,
Employed At:
Mailing Address: 103 Powell Ct.
Brentwood, Tn. 37027

Individual Capacity

(5) Defendant's Name: <u>ERRON CAMPBELL</u>
Official Possition: Medical Director
Employed At:
Mailing Address: 18 Huntleigh Ln.
St. Louis Mo. 63131

Individual Capacity

(6) Defendant's Name: <u>RHONDA ALMANZA</u> *
Official Possition: Vice-President of Operations, Region II
Employed At:
Mailing Address: 950 West Elliot
Tempe, AZ. 85284

Individual Capacity

(7) Defendant's Name: <u>HELEN SNEED</u> *
Official Position: Director Of Operations, Region II
Employed At:
Mailing Address: 2631 N.W. 33rd Place,
Gainesville, Fla. 32605

Individual Capacity

(8) Defendant's Name: <u>TERESA WOODAL</u> *
Official Possition: Infectious Disease Control
Employed At:
Mailing Address: 2627 N.W. 43rd St. Suite 202 2nd Fl.
Gainesville, Fla. 32606

- Page 3 of 13 -

Individual Capacity

(9) Defendant's Name: E. PEREZ—LUGO
Official Possition: Former Chief Health Officer UCI
Employed At: Centurion Of Florida, LLC.
Mailing Address: Paddock Park Prof. Bldg.
3200 S.W. 34th Ave. Bldg. 700, Suite 701
Ocala, Fla. 34474

Individual Capacity

(10) Defendant's Name: Dr. E. L. TOLEDO
Official Possition: Medical Doctor
Employed At:
Mailing Address: Paddock Park Prof. Bldg.
3200 S.W. 34th Ave. Bldg. 700, Suite 701
Ocala, Fla. 34474

Individual Capacity,

(11) Defendant's Name: JULIE L. JONES,
Official Possition: Past Secretary
Employed At: Department of Corrections
Mailing Address: 501 S. Calhoun Street
Tallahassee, Fla. 32399-2500

Official Capacity

(12) Defendant's Name: THOMAS REIMERS,
Official Possition: Health Services Director,
Employed At: Department Of Corrections
Mailing Address: 501 S. Calhoun Street
Tallahassee., Fla. 32399-2500

Individual Capacity

(13) Defendant's Name: <u>DANIEL CHERRY</u>,
Official Position: Centurion's Former Medical Director FDC
Employed At:
Mailing Address: Paddock Park Prof. Bldg.
3200 S.W. 34th Ave. Bldg. 700, Suite 701,
Ocala, Fla. 34474

Individual Capacity

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding condition or events in any prison, jail, or detention center. 42 U.S.C.§1997e(a). Plaintiff must submit copies of all grievances, appeals, and responses with this complaint to verify exhaustion. Failure to demonstrate exhaustion may be grounds for dismissal.

    **A.** The complaint does concern events occurring within the Florida Department of Corrections.

Informal grievance is not required for medical grievances.
A Formal Grievance was filed and is attached as Appendix _____
A Formal Grievance Appeal was filed and is attached as Appendix _____.
There was no disciplinary action involed.

    **B.** This complaint does not involve a county jail.

## IV. PREVIOUS LAWSUITS

NOTE FAILURE TO DISCLOSE ALL PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

    **A.** Have you initiated other actions in <u>state court</u> dealing with the same or similar facts/issues involved in this action? **NO.**

    **B.** Have you initiated other actions in federal court dealing with the same or *similar* facts/issues involved in this action? **NO.**

(Attach additional pages as necessary to list state court cases.)

**C.** Have you initiated <u>other actions</u> (*besides those listed above in Questions (A) and (B)*) in either state or federal court that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)? **NO.**

**D.** Have you ever had any actions in federal court dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed: **NO.**

## STATEMENT OF FACTS

1. Plaintiff is currently incarcerated at Union Correctional Institution and at all times relevant hereto was under the care, custody and control of the State of Florida, Department of Corrections.

2. Based off of information and belief, Defendants Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Lugo, Toledo, and Cherry worked for the Department of Corrections until 10/1/2012 at which time Defendant Corizon was contracted by Defendant Jones to provide medical services. The Defendants were hired by Corizon to provide medical treatment to inmates. In August 2016, Defendant Centurion took over the contract and hired the defendants.

3. Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry diagnosed the Plaintiff with Hep-C but failed to provide any treatment for same even when there there was available treatment.

4. Plaintiff is currently 62 years of age and has been incarcerated since November 27, 2006. Plaintiff suffered from Hepatitis "C" and the disease had escalated to such a level that Plaintiff now has **decompensated cirrhosis**. (f4). Plaintiff is currently under the care of Defendant, Centurion, via Defendant Inch.

5. Plaintiff suffers with Fatigue, mild depression, joint pains, brain fog,

swelling & pain in liver region, irrittable bowel movement, sleep disorder, and he is constantly in fear of getting liver cancer.

6. Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry would either say the blood results look good or when the (ALT) & (AST) enzymes did rise above normal, Plaintiff was informed they would have to remain elevated at least twice over the normal range for two consecutive clinic reviews, before they would take further action, but they never did.

7. On September 23, 2011, a blood specimen was taken from Plaintiff to be evaluated, the results of this test had scored Plaintiff's AST at 143 & his ALT at 120, both scores were high and indicated that the Plaintiff had *cirrhosis (F4)*.

8. On Novemeber 27, 2012, a blood specimen was taken from Plaintiff to be evaluated, the results of this test had scored Plaintiff's AST at 108 & his ALT at 91, both scores were high and indicated that the Plaintiff had *cirrhosis (F4)*.

9. On September 9, 2013, a blood specimen was taken from Plaintiff to be evaluated, the results of this test had scored Plaintiff's AST at 60 & his ALT at 61, both scores were high and indicated that the Plaintiff had *cirrhosis (F4)*.

10. On August 22, 2014, a blood specimen was taken from Plaintiff to be evaluated, the results of this test had scored Plaintiff's AST at 55 & his ALT at 51, both scores were high and indicated that the Plaintiff had *cirrhosis (F4)*.

11. On February 18, 2015, a blood specimen was taken from Plaintiff to be evaluated, the results of this test had scored Plaintiff's AST at 60 & his ALT at 54, both scores were high and indicated that the Plaintiff had *cirrhosis (F4)*.

12. On January 29, 2015, a blood specimen was taken from Plaintiff to be evaluated, the results of this test had scored Plaintiff's ALT at 60& his AST at 75, was high and indicated that the Plaintiff had *cirrhosis (F4)*.

13. On May 26, 2016, a blood specimen was taken from Plaintiff to be

evaluated, the results of this test had scored Plaintiff's ALT at 47 & his AST at 70, which was still high and the fibrosis interpretation was that the Plaintiff had severe *cirrhosis (F4)*.

14. On July 29, 2016, a blood specimen was taken from Plaintiff to be evaluated, the results of this test had scored Plaintiff's ALT at 52 & his AST at 52, which was still high and the fibrosis interpretation was that the Plaintiff had severe *cirrhosis (F4)*.

15. Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry were aware of the Plaintiff's liver being damaged but **"REFUSED"** to treat the Plaintiff because of the cost of treatment. The Defendants intentional delay in providing medical treatment caused the Plaintiff to suffere permanent injury to his liver.

16. It has been well established within the medical field, that an individual who had been diagnosed with (HCV) that enzyme levels alone are not a good indicator of the livers condition. In fact, a person can be completely asymptomatic and have cirrhosis. Plaintiff was not offered treatment even when there was treatment available.

17. Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry, never did a biopsy to determine the damage of the liver.

18. In or about 2013, a new break through drug was approved by the F.D.A. and released to the market, Direct-acting anti-virals, known as (DAA's). This not only became the new standard of care for (HCV) patients, *it was the cure*! Its success rate was 95% to 97% effective with very little side-affects.

19. In November of 2017, a Federal hearing was being conducted on a preliminary injunction in a class-action case of all HCV inmates with HCV, concerns. FDC's policies and treatment of such, which the Court did grant and

ordered the treatment of hundreds and eventually thousands of HCV inmate within FDC. See <u>Hoffer v. Jones,</u> Case No. 4:17-CV-214-MW/CAS. After this Court order the Defendants started to comply and were evaluating through blood-test called a "Fibrotest," which had been FDA approved since 2009.

20. Plaintiff asked Defendant physicians regarding the benefits of DAA's and requested treatment again. The Plaintiff was informed by Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry that he did not need treatment and by others stating that the medical administration would not authorize treatment because of cost.

21. Plaintiff continued to request treatment at each doctors clinic from Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry only to be refused for what appears to be non medical reasons, (money) by John/Jane Doe's (possibly by Utilization Management ("UM")), without the benefit of a Specialist Review.

22. Under FDC's contract with Defendants, there were two ways that Doctors could obtain necessary drugs for treatment. Drugs routinely prescribed were listed on an FDC-approved list, referred to as the Formulary. Those drugs were paid for directly by FDC. Drugs not listed on the Formulary had to be specially requested. Specially requested drugs were paid for by Defendants Corizon and Centurion. Such drugs required a "Drug Exception Request" (DER). The DAA's were not included on the Formulary.

23. While Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry were bickering over who pays for the DAA's, they were well aware that severe injury was continuing to progress to Plaintiff's liver as well as the life time higher risk of future liver cancer. Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry, nonetheless took no measures to

treat Plaintiff for his serious medical need.

24. Based of of information & belief, in 2015, Defendant <u>Mr. Reimer</u>, the FDC Director of Health Services Administrator, whom was responsible for overseeing the contractors for Defendants Jones & Inch, prepared a legislative budget request for 6.5 million to obtain DAA's for the 2016-17 fiscal year. However, the request never made it out of F.D.C., ie., someone (John / Jane Doe) denied it.

25. Based on information & belief, in 2016, Defendant Reimers prepared a second legislative budget request for the 2017-18 fiscal year, at 29 million to purchase (DAA's) however, it too was denied by Defendants John / Jane Doe within the FDC. By Mid-2016, FDC had updated its (HCV)-treatment policy to acknowledge that prescribing DAA's was the standard of care. It had been the standard since 2014, but the Defendants still refused to treat the Plaintiff.

26. Plaintiff's medical file is replete with evidence of escalation of Hep "C" and undeniable liver damage. The Defendants Policy & Practice of ignoring and concealing the Plaintiffs medical condition from the Plaintiff in order to cover up the need for treatment with DAA's caused damage to the Plaintiff's liver that cannot be fixed. Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry agreed upon policy defying mandated standards of care simply because of the cost.

27. Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry knew the policy defied duty owed Plaintiff. These Defendants knew Plaintiff would not be treated because of the cost because it is cheaper to pay a wrongful death claim then it is to pay for the treatment for HEP-C. Nonetheless, at the time of the June 2014, FBOP-CDC guideline treatment change, these Defendants acting under color of state law, had in effect an agreement that infected inmates/Plaintiff would not be informed of the

existence of DAAs, and Plaintiff would not be treated.

28. Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry are directly responsible for this conduct as health care providers. Each Defendant knew the gravity of the policy/procedure and custom of non-treatment, yet chose not to inform Plaintiff of availability of care and not to provide Plaintiff treatment.

29. Plaintiff requested treatment from Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry and was refused per policy and custom by Defendant E. Perez-Lugo, Dr E. L. Toledo and Thomas Reimers, FDC Director of Health Services, and Julie L. Jones. Plaintiff was not provided the Cure for HEP-C by Defendant Centurion until well after the decision in the Hoffer injunction, due to policy agreed to by all of the Defendants not to provide DAA's due to cost. Defendants knew that the FBOP--CDC guideline change of 2014-2016, mandated that Plaintiff receive proper evaluation and DAA's {the Cure}.

30. Plaintiff pleads that his physical condition in total constitutes a serious medical condition and his prior non-treatment grossly violated societal standards. Intentional neglect and intentional delay by Defendants of Plaintiff's serious medical need demonstrates cruel and unusual punishment. Because of Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry deliberate indifference, a delay allowing the disease to progress to severe fibrosis—Plaintiff now runs a lifetime risk of two–five times greater risk of developing liver cancer. Plaintiff's pain and suffering is on going.

## VI. STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. If claims are not related to the same basic incident

or issue, they must be addressed in a separate civil rights complaint.

## CAUSE OF ACTION ONE

Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry, as stated in paragraphs 1 through 29, violated the Plaintiff's 8th Amendment rights to be free from cruel and unusaul punishment by being deliberate indifferent to his serious medical needs. The Defendants intentionally delayed treatment for the Plaintiff's HEP-C causing irreversible liver damage simply because of the cost of treatment.

The Defendants willfully and intentionally refused to give the Plaintiff DAA's to treat his Hep-C until well after the class action lawsuit was settled in Hoffer v. Jones, Case No. 4:17-CV-214-MW/CAS. If it was not for the lawsuit, the Defendants would have let the Plaintiff die because it is cheaper in the long run.

## VII. RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite cases/statutes.

### COMPENSATORY DAMAGES

Plaintiff seeks compensatory damages in the amount of $300,000 dollars from Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry, jointly & severelly.

### PUNITIVE DAMAGES

Plaintiff seeks punitive damages in the amount of $500,000 from Defendants Corizon, Myers, Campbell, Almanza, Sneed, Woodal, Reimers, Centurion, Lugo, Toledo, Jones, Inch and Cherry, jointly & severelly.

### OATH

I declare under penalty of perjury that I have read the above and have and that the foregoing statements of fact, including any continuation pages, are true and

correct. Dated this 21 day of August, **2019**

_Perry Brown_
Perry Brown #044515

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this document was sent to the below listed parties by turning it over to prison authorities to be mailed by pre-paid U.S. First class mail on this 21 day of August, **2019**.

Clerk of Courthouse
U.S. Middle District
300 North Hogan Street
Jacksonville, Florida 32202

[ORIGINAL]

_Perry Brown_
Perry Brown #044515
Union Correctional Institution
P. O. Box 1000
Raiford, Fla. 32083

RECIEVED
UNION CORRECTIONAL INSTITUTION
AUG 21 2019
BY: PB
FOR MAILING