UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PERRY BROWN,

    Plaintiff,

v.                                             Case No. 3:19-cv-997-BJD-MCR

THE FLORIDA DEPARTMENT
OF CORRECTIONS, CORIZON,
LLC, and CENTURION OF
FLORIDA, LLC,

    Defendants.
_____

# ORDER

## I. Status

Plaintiff, Perry Brown, an inmate in the custody of the Florida Department of Corrections, initiated this action by filing a pro se Civil Rights Complaint (Doc. 1) under 42 U.S.C. § 1983. He is proceeding on an Amended Complaint (Doc. 14; AC), filed with help from court appointed counsel on August 12, 2020. As Defendants, Plaintiff sues the Florida Department of Corrections (FDOC); Corizon, LLC (Corizon); and Centurion of Florida, LLC (Centurion). AC at 2-3. Plaintiff, who alleges he suffers from Hepatitis C virus (HCV), argues that Defendants Corizon and Centurion violated his Eighth Amendment right to be free from cruel and unusual punishment and that

Defendant FDOC violated Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (RA) when Defendants refused to provide Plaintiff with lifesaving HCV treatment under a cost-saving policy. Id. at 15-20. As relief, Plaintiff seeks declaratory relief, compensatory and punitive damages, as well as attorney's fees and costs. Id. at 21.

Before the Court is Defendant Corizon's Motion to Dismiss, in which Corizon argues that Plaintiff failed to exhaust his administrative remedies before filing the instant lawsuit.[1] See Defendant Corizon, LLC's Motion to Dismiss the Amended Complaint (Doc. 41; Motion). Plaintiff filed a Response in opposition to the Motion. See Perry Brown's Response to Defendant Corizon's Motion to Dismiss (Doc. 51; Response). The Motion is ripe for review.

## II. Plaintiff's Allegations

In his AC, Plaintiff raises four counts. See generally AC. Plaintiff alleges in Counts I and II that Corizon and Centurion, respectively, were deliberately indifferent to his serious medical needs and denied him necessary treatment for his chronic HCV, in violation of the Eighth Amendment. AC at 1. In Count III, Plaintiff alleges that the FDOC violated the ADA by discriminating against him based on his disability when it withheld medical treatment while not withholding medical treatment from prisoners with other disabilities or who

---

[1] Defendants FDOC and Centurion each filed an Answer in response to the Amended Complaint. See Docs. 40, 46.

2

were not disabled. Id. at 15-19. Finally, in Count IV, Plaintiff asserts that the FDOC violated the RA when it excluded Plaintiff from receiving lifesaving HCV treatment "solely by reason of his disability." Id. at 19-20. Because the matter currently before the Court only pertains to Plaintiff's allegations against Corizon, the Court limits its summary to those allegations.

Plaintiff alleges that Corizon, an out-of-state corporation registered to do business in Florida, contracted with the FDOC from October 2012 until May 2016 to provide health care services to prisoners in FDOC custody, including Plaintiff who is housed at Union Correctional Institution. Id. at 3. Plaintiff alleges that he entered FDOC custody on November 27, 2006. Id. at 7. Though it is unclear when Plaintiff received his diagnosis, he contends that when he entered FDOC custody, he suffered from chronic HCV, a blood-borne disease. Id. at 3-7. He maintains that chronic HCV is a serious medical need, causing liver inflammation, liver fibrosis, cirrhosis, and possible death. Id. at 3. Plaintiff asserts that in 2013, a new class of drugs known a direct-acting antivirals (DAAs) became available to HCV patients. Id. at 5. He argues that DAAs are oral medications with few side effects that cure HCV at a rate over 95%. Id. According to Plaintiff, in 2014, the American Association for the Study of Liver Diseases and the Infectious Disease Society of America recommended DAA treatment for all persons with chronic HCV. Id. And since 2014, DAA treatment "has been the standard of care for the treatment of HCV . . . ." Id.

3

Plaintiff contends that despite DAAs becoming available in 2013, Defendants failed to provide these lifesaving medications to thousands of HCV positive prisoners, in contravention of the prevailing standard of care. Id. at 6.

Plaintiff argues that Corizon officials knew about DAAs when the medication became available in 2013 and knew DAA treatment was the medical standard of care and treatment for chronic HCV. Id. at 7. He also contends that Corizon knew that thousands of FDOC prisoners suffered from HCV, but it refused to provide DAAs or any other treatment for the virus. Id. Plaintiff argues that he underwent a physical exam when he entered prison in 2011, during which FDOC physicians informed Plaintiff that his HCV infection had caused decompensated cirrhosis. Id. at 7. According to Plaintiff, he underwent further medical tests in September 2011, November 2012, September 2013, August 2014, February 2015, May 2016, and July 2016, all of which confirmed that his decompensated cirrhosis had increasingly advanced. Id. at 7-8. For nearly four years, however, Plaintiff asserts that Corizon knew Plaintiff had chronic HCV but refused to provide him with DAA treatment despite knowing that his condition prioritized him for such treatment. Id. at 8.

According to Plaintiff, Corizon denied him HCV treatment from July 2013 until May 2016 because Corizon and the FDOC "had a policy, practice, and custom of not providing [DAAs] to patients with HCV, in part to save costs and to make larger profits." Id. at 9. He argues that as a result of Corizon's

4

practice, policy, and custom of refusing to treat Plaintiff with DAAs from July 2013 to May 2016, "he sustained serious damage to his health and an increased risk of future health complication." Id. Plaintiff maintains Defendant Centurion replaced Corizon as the FDOC's contracted health care vendor in May 2016, but Centurion continued to deny Plaintiff DAA treatment. According to Plaintiff, he did not receive treatment until October 9, 2017; however, because all Defendants delayed his treatment, he continues to sustain serious damage to his health and irreparable damage to his liver. Id. at 11.

### III. Summary of Parties' Positions on Exhaustion

In its Motion, Corizon argues that Plaintiff failed to exhaust his administrative remedies for his Eighth Amendment claim against it, as required by the Prison Litigation Reform Act (PLRA), before filing the instant § 1983 lawsuit. Motion at 1. According to Corizon, it provided medical services in certain Florida prisons from September 2013 until it cancelled its contract in May 2016. Id. at 2. Corizon maintains that Plaintiff was cured of his "disease on October 9, 2017." Id. at 2. Corizon contends that while Plaintiff filed "a single qualifying grievance . . . on December 7, 2018," (id. at 2 (citing Doc. 1-1)), Plaintiff's efforts were insufficient to exhaust any claim against Corizon because "the grievance was filed two years [and] seven months after Corizon ceased providing services in any Florida prison and more than a year after he

5

was cured of the disease" (id. at 2). Corizon argues that because Plaintiff failed to file a grievance while Corizon was still providing medical services to FDOC prisoners, the grievance Plaintiff filed did not place Corizon on notice or give it a chance to resolve the issue. Id. at 7. Therefore, according to Corizon, the grievance was not adequate to exhaust Plaintiff's claims against Corizon. Id.

Plaintiff asserts that he exhausted his claim against Corizon because he completed all necessary steps of the FDOC's grievance procedure and the grievances adequately addressed Corizon's delay in providing medical treatment. He recounts that in September 2011, medical tests revealed Plaintiff's HCV had caused decompensated cirrhosis, the most severe stage of cirrhosis. Response at 3. Although Plaintiff began DAA treatment in May 2016, the treatment failed to correct the damage he already sustained and he continues to suffer effects from the years in which Corizon, Centurion, and the FDOC denied him HCV treatment. Id. He maintains that the grievances he filed were clearly "backwards looking," seeking relief for Corizon's failure to provide medical treatment for an ongoing issue. Id. at 8.

In support of his argument, Plaintiff references a series of grievances that he attached as exhibits to his original Complaint. See generally Doc. 1-1. These record attachments demonstrate that Plaintiff, on December 7, 2018, wrote a formal grievance of a "medical nature" (log # 1812-213-027), which provided the following:

6

> I grieve the fact that the Department of Corrections and the medical department (Corizon & Centurion) deliberately delayed my medical treatment for HCV solely because they did not want to pay for DAAs treatment.
>
> This intentional delay for treatment caused me to have cirrhosis of the liver which is damage that is not reversible. These officials acted individually while acting under color of law without any regards to human life. . . .

Doc. 1-1 at 3. On December 21, 2018, Dr. C. Balbuena, MD, Chief Health Officer, issued a response (log # 1812-213-027), which stated in relevant part:

> Your request for Administrative Remedy or Appeal has been received, reviewed and evaluated.
>
> Reviewed records indicate that you were seen by the Infectious Disease Case Manager on 11/1/2018 to follow up after completion of your treatment. Your condition will continue to be monitored through chronic clinics, with routine lab work and imaging when clinically indicated. Sick-call [is] available should you have further concerns.
>
> You are being treated in accordance with FDC policy and procedure.
>
> Based on the above information, your grievance is denied.
>
> . . . .

Id. at 4. Plaintiff then filed an appeal of the denial to the Secretary (log # 19-6-00982), arguing in pertinent part:

> I respectfully disagree with the response to my formal (Log No.: 1812-213-027).

> The response did not address the issue of intentionally delaying treating my Hep which caused me to get cirrhosis of the liver. . . .

<u>Id.</u> at 5. Officials denied the appeal, finding the following:

> Appeal Denied:
>
> Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.
>
> It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing.
>
> Please be advised that this office cannot corroborate your allegations against the health care staff.
>
> It is determined that the response made to you by Dr. Balbuena on 12/21/2018 appropriately addresses the issues you presented.
>
> Records reviewed indicate that to date, you have not accessed sick call to have your medical concerns addressed.
>
> Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

Id. at 6. Relying on these grievances, Plaintiff argues he fully exhausted his claims against Corizon and that "it is immaterial" that he filed his grievances after Corizon terminated its contract with the FDOC.[2] Id. at 9.

## IV. Analysis

The PLRA requires that Plaintiff exhaust his available administrative remedies before pursuing a § 1983 claim about prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Nevertheless, Plaintiff need not "specially plead or demonstrate exhaustion in [his] complaint[]." See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). See also Jones, 549 U.S. at 211. The Supreme Court has

---

[2] Plaintiff also attaches to his original Complaint a formal grievance and appeal challenging Centurion and the FDOC's refusal to give him a liver transplant. See Doc. 1-1 at 7-10.

9

instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies of the institution. Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

In Ross v. Blake, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of

[its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Corizon bears "the burden of proving that [Plaintiff] has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082. The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). Additionally, "A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218

11

(stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. Dimanche, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. See Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. See id. § 33-103.011(4).

Pavao, 679 F. App'x at 824. However, the ordinary three-step procedure does not necessarily apply in all instances. For example, a prisoner may skip the informal grievance step and immediately file a formal grievance for issues pertaining to various things, including "medical grievances" or "a formal grievance of a medical nature." Fla. Admin. Code r. 33-103.005(1); Fla. Admin. Code r. 33-103.008. If a prisoner can bypass the informal grievance step, he must typically file the formal grievance with the warden within 15 days from

the date on which the incident or action being grieved occurred. Fla. Admin. Code r. 33-103.011(1)(b). A response must be provided to the inmate within 20 days of receipt of the formal grievance. Fla. Admin. Code r. 33-103.006(6). "If the inmate is unsatisfied with the resolution of a formal grievance, he may appeal the grievance to the Office of the Secretary using Form DC1-303 (same form as a formal grievance)." Jenkins v. Sloan, 826 F. App'x 833, 835 (11th Cir. 2020) (citing Fla. Admin. Code Ann. R. 33-103.007). The grievance appeal to the Office of the Secretary must be received within 15 days from the date the response to the formal grievance is returned to the inmate. Fla. Admin. Code r. 33-103.11(c).

Here, the Court finds that Plaintiff's allegations, taken as true, preclude dismissal at the first step of Turner. As such, the Court will proceed to Turner's second step and make specific findings to resolve the disputed factual issues related to exhaustion. To resolve a factual dispute about exhaustion, a district court may "consider facts outside of the pleadings . . . so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (footnotes omitted). Additionally, in this circuit, courts may consider record documents or attachments "only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (citing Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir. 1999)); see also

Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co., No. 6:14-cv-6016-Orl-31TBS, 2016 WL 3144103, at *1 (M.D. Fla. June 6, 2016) (quoting Ritz v. Lake Cnty., Ill., No. 08 C 5026, 2010 WL 2025392, at *2 (N.D. Ill. May 2010)) (concluding this rule extends to documents attached to a plaintiff's response to a motion to dismiss). The grievances attached to the original Complaint are essential to Plaintiff's claims and the parties each rely on these documents and do not dispute their authenticity. See Motion at 2; Response at 4. Therefore, the Court may consider these documents in evaluating the merits of the Motion without converting it to a motion for summary judgment.

Corizon does not dispute that Plaintiff's formal grievance of a "medical nature" and his appeal afterward were enough to complete the FDOC's grievance procedure. Instead, Corizon maintains that it stopped providing medical services to FDOC inmates years before Plaintiff started the grievance process, and thus, it could not have resolved any alleged constitutional injury for which the grievances aimed to correct. Motion at 6. However, Plaintiff's allegations in his grievances and Amended Complaint do not concern multiple separate episodes but one continuing deprivation of medical care spanning multiple years and an ongoing decline in health. Thus, Plaintiff's Eighth Amendment claim is not limited to one precise event so that Plaintiff had to grieve it within a specific timeframe. Plaintiff's 2018 formal grievance and his appeal thereafter satisfied the FDOC's grievance procedures to sufficiently

14

exhaust his ongoing medical condition because it "accomplished § 1997e(a)'s purpose by alerting prison officials to the problem and giving them the opportunity to resolve it before being sued." Parzyck, 627 F.3d at 1219. Prison officials were still able to resolve the continuing deficiency in Plaintiff's medical care and treat his deteriorating cirrhosis. Indeed, officials responded to Plaintiff's grievances by advising that his "condition will continue to be monitored through chronic clinics, [] routine lab work and imaging when clinically indicated." Doc. 1-1 at 4. Because Plaintiff alleges an ongoing Eighth Amendment violation, his 2018 grievances exhausted this claim. See Kinard v. Centurion of Fla, LLC, No. 3:19-cv-490-J-34-JRK, 2020 WL 3542650, at *8 (M.D. Fla. June 30, 2020) (denying Corizon's same exhaustion argument because the plaintiff's 2019 grievances about delayed HCV treatment pertained to ongoing medical issue); see also Dunlap v. Corizon Health Care, No. 5:15-CV-328-WTH-GRJ, 2017 WL 3530103, at *5 (N.D. Fla. Feb. 1, 2017), report and recommendation adopted, 2017 WL 3526662 (N.D. Fla. Aug. 15, 2017) (finding that because the plaintiff alleged ongoing deprivation of medical care over a five-month span, he "could have initiated the grievance procedure by filing a formal grievance for failing to receive medical care following the initial infection at any point during those five months."); Ellis v. Vadlamudi, 568 F. Supp. 2d 778, 785 (E.D. Mich. 2008) (analogizing continuing violation doctrine to exhaustion principles to find that denial of treatment that predated

filing of grievance was exhausted where plaintiff alleged ongoing denial of treatment). Indeed, prison officials did not treat Plaintiff's grievances as untimely; therefore, this Court will not either. See Whatley, 802 F.3d at 1215 (11th Cir. 2015) ("[A] procedural flaw ignored by a prison cannot later be resurrected by the District Court to defeat exhaustion.") (citation omitted). As a result, the Motion is due to be denied.

In consideration of the foregoing, it is

**ORDERED**:

1. Defendant Corizon, LLC's, Motion to Dismiss the Amended Complaint (Doc. 41) is **DENIED**.

2. Defendant Corizon, LLC, must file an answer to the Amended Complaint by **June 1, 2021**. After Defendant Corizon, LLC, files its answer, the Court will set further deadlines by separate order.

3. The parties are encouraged to discuss the possibility of settlement and notify the Court if their efforts are successful. In doing so, Plaintiff and Defendants are encouraged to maintain a realistic approach in making and considering any settlement offers.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of May, 2021.

BRIAN J. DAVIS
United States District Judge

Jax-7
C: counsel of record